# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

## CASE NO.:  12-CV-23886-RSR

DVI RECEIVABLES XIV, LLC,
*et al*.

   APPELLANTS,

vs.

MAURY ROSENBERG,

   APPELLEE.

_____/

## <u>APPELLANTS' INITIAL BRIEF ON APPEAL</u>

SHUTTS & BOWEN LLP
John F. Mariani, Esq.
Florida Bar No. 263524
Larry I. Glick, Esq.
Florida Bar No. 75064
Peter H. Levitt, Esq.
Florida Bar No. 650978
1500 Miami Center
201 South Biscayne Boulevard
Miami, Florida 33131
Telephone: 305-415-9447
Telecopier: 305-415-9873

ATTORNEYS FOR APPELLANTS

## TABLE OF CONTENTS

**Page(s)**

BASIS OF JURISDICTION..................................................................................1

INTRODUCTION AND STATEMENT OF ISSUES.................................................1

STANDARD OF REVIEW..................................................................................2

STATEMENT OF THE CASE ............................................................................3

ARGUMENT..................................................................................................12

   I.   THE FEE MOTION WAS NOT FILED TIMELY .......................................12

  II.   THE BANKRUPTCY COURT SHOULD HAVE WAITED UNTIL THE
      ENTIRE CASE WAS RESOLVED BEFORE RULING ON ROSENBERG'S
      CLAIMS FOR ATTORNEYS' FEES AND COSTS.....................................14

 III.   IT WAS ERROR TO AWARD (A) APPELLATE FEES, (B) FEES INCURRED
      IN PURSUING DAMAGES CLAIMS, AND (C) FEES ON FEES .............................16

 IV.   IT WAS ERROR TO ENTER AN ORDER AWARDING FEES AND COSTS
      TO ROSENBERG BEFORE ADJUDICATING USB'S RIGHT OF SETOFF.............22

  V.   IT WAS ERROR TO AWARD FEES AND COSTS AGAINST LYON AND
      USB BECAUSE THEY ARE NOT PETITIONING CREDITORS...............................23

 VI.   THE FEES AWARDED ARE UNREASONABLE IN VIEW OF THE SCOPE
      AND NATURE OF THE PROCEEDING AND THE EXCESSIVE TIME
      SPENT  ON THIS MATTER BY ROSENBERG'S LAW FIRMS...............................27

CONCLUSION................................................................................................31

REQUEST FOR ORAL ARGUMENT..................................................................32

CERTIFICATE OF SERVICE ...........................................................................32

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

CASES

*Alyeska Pipeline Serv. Co. v. Wilderness Society*,
  421 U.S. 240 (1975) ............................................................................16

*Andrews v. U.S.*,
  122 F.3d 1367 (11th Cir. 1997)..................................................... 15, 16

*Astrue v. Ratliff*,
  130 S. Ct. 2521 (2010) .......................................................................22

*Brandt v. Magnificent Quality Florals Corp.*,
  2011 WL 4625379 (S.D. Fla. 2011) ............................................ 15, 16

*Brite v. Orange Belt Securities Co.*,
  133 Fla. 266, 182 So. 892 (1938)........................................................17

*Buckhannon Bd. & Care Home, Inc. v. W. Va. Dept. Of Health & Human Resources*,
  532 U.S. 598 (2001) ............................................................................16

*Central Bank of Denver, N.A. v. First Interstate Bank of Denver*,
  511 U.S. 164 (1994)............................................................................25

*Commissioner v. Jean*,
  496 U.S. 154 (1990) ............................................................................14

*Flitton v. Primary Residential Mortg., Inc.*,
  614 F.3d 1173 (10th Cir. 2010)...........................................................19

*Florida Patient's Compensation Fund v. Rowe*,
  472 So. 2d 1145 (Fla. 1985) ...............................................................17

*Gershuny v. Martin McFall Messenger Anesthesia Professional Ass'n*,
  539 So. 2d 1131 (Fla. 1989) ...............................................................17

*Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*,
  530 U.S. 1 (2000) ...............................................................................23

*Hensley v. Eckerhart*,
  461 U.S. 424 (1983) ............................................................................15

*Higgins v. Vortex Fishing Systems, Inc.*,
  379 F.3d 701 (9th Cir. 2004) ..........................................................7, 18

*Hoyt v. Robson Companies, Inc.*,
   11 F.3d 983 (10th Cir. 1993) ....................................................... 19

*In re Advance Press & Litho, Inc.*,
   46 B.R. 700 (Bankr. D. Colo. 1984) ............................................ 20

*In re Allen-Main Assoc., Ltd.*,
   229 B.R. 577 (Bankr. D. Conn. 1999) ................................. 17, 18, 19

*In re Apache Trading Group, Inc.*,
   229 B.R. 887 (Bankr. S.D. Fla. 1999) ...................................... 22, 23

*In re Atlas Machine and Iron Works, Inc.*,
   190 B.R. 796 (Bankr. E.D. Va. 1995) ....................................... 19, 28

*In re Better Care, Ltd.*,
   97 B.R. 405 (Bankr. N.D. Ill. 1989) ............................................ 22

*In re Childs Co.*,
   52 F. Supp. 89 (S.D.N.Y. 1943) ................................................... 25

*In re Del Mission Ltd.*,
   98 F.3d 1147 (9th Cir. 1996) .................................................. 17, 18

*In re Denver Comm. Dev. Credit Union*,
   2004 WL 2274961 (Bankr. D. Colo. Oct. 5, 2004) .................... 25, 26

*In re DSC, Ltd.*,
   387 B.R. 174 (Bankr. E.D. Mich. 2008) ........................................ 7

*In re First Colonial Corporation of America*,
   544 F.2d 1291 (5th Cir.), *cert. denied sub nom.*, *Baddock v. American Benefit Life
   Ins. Co.*, 431 U.S. 904 (1977) .................................................... 28

*In re Fox*,
   171 B.R. 31 (Bankr. E.D. Va. 1994) ........................................... 21

*In re Glannon*,
   245 B.R. 882 (D. Kan. 2000) ...................................................... 24

*In re Hill*,
   562 F.3d 29 (1st Cir. 2009) ........................................................ 23

*In re HSR Associates*,
   162 B.R. 680 (Bankr. D.N.J. 1994) ............................................. 24

*In re IBT Intern., Inc.*,
   2012 WL 3264243 (9th Cir. BAP 2012) ...................................... 19

iii

*In re Inbar,*
    1991 WL 97529 (D. Mass 1991) ...................................................................................13

*In re John Richards Homes Bldg. Co.,*
    405 B.R. 192 (E.D. Mich. 2009) ..................................................................................19

*In re K.P. Enterprise,*
    135 B.R. 174 (Bankr. D. Me. 1992) .............................................................................22

*In re Landmark Distributors, Inc.,*
    195 B.R. 837 (Bankr. D.N.J. 1996) .............................................................................20

*In re Law Center,*
    304 B.R. 136 (Bankr. E.D. Pa. 2003) .....................................................................18, 19

*In re Merrifield Town Ctr. Ltd. P'ship,*
    2010 WL 5015006 (Bankr. E.D. Va. 2010) .................................................................30

*In re Oakley Custom Homes, Inc.,*
    168 B.R. 232 (Bankr. D. Colo. 1994) ..........................................................................26

*In re Overseas Holdings Ltd. Partnership,*
    392 B.R. 889 (Bankr. M.D. Fla. 2008) ........................................................................28

*In re Pierce,*
    165 B.R. 252 (Bankr. N.D. Ind. 1994) ........................................................................20

*In re Reid,*
    854 F.2d 156 (7th Cir. 1988) .........................................................................................7

*In re Rush-Hampton Industries, Inc.,*
    98 F.3d 614 (11th Cir. 1996) ......................................................................................23

*In re Schiliro,*
    72 B.R. 147 (Bankr. E.D. Pa. 1987) ............................................................................22

*In re Scrap Metal Buyers of Tampa, Inc.,*
    253 B.R. 103 (M.D. Fla. 2000) .....................................................................................7

*In re Section 20 Land Group, Ltd.,*
    240 B.R. 812 (Bankr. M.D. Fla. 2000) ........................................................................13

*In re Southern California Sun-Belt Developers, Inc.,*
    608 F.3d 456 (9th Cir. 2010) .......................................................................................21

*In re Sublett,*
    895 F.2d 1381 (11th Cir. 1990) .....................................................................................2

iv

*In re Vasseli*,
    5 F.3d 351 (9th Cir. 1993) ................................................................. 18

*In re Verola*,
    336 B.R. 547 (S.D. Fla. 2004) ............................................................. 2

*In re Walker*,
    2009 WL 7906786 (11th Cir. 2009) ..................................................... 13

*In re Williams*,
    224 B.R. 523 (2d Cir. BAP 1998) ........................................................ 18

*James v. Wash Depot Holdings, Inc.*,
    489 F. Supp. 2d 1341 (S.D. Fla. 2007) ................................................ 16

*Johnson v. Georgia Highway Express, Inc.*,
    488 F.2d 714 (5th Cir. 1974) ............................................................... 28

*Key Tronic Corp. v. United States*,
    511 U.S. 809 (1994) ........................................................................... 16

*Lamie v. United States Trustee*,
    540 U.S. 526 (2004) ........................................................................... 23

*Lewis v. Federal Prison Industries, Inc.*,
    953 F.2d 1277 (11th Cir. 1992) ........................................................... 16

*Libby v. Hopkins*,
    104 U.S. 303 (1881) ........................................................................... 22

*Main v. Benjamin Foster Co.*,
    141 Fla. 91, 192 So. 602 (1939) .......................................................... 17

*McElveen v. Peeler*,
    544 So. 2d 270 (Fla. 1st DCA 1989) .................................................... 25

*Meisel v. Grunberg*,
    651 F. Supp. 2d 98 (S.D.N.Y. 2010) .................................................... 25

*Navid v. Uiterwyk Corp.*,
    130 B.R. 594 (M.D. Fla. 1991) ........................................................... 25

*P.A.G. v. A.F.*,
    602 So. 2d 1259 (Fla. 1992) ............................................................... 17

*Popham v. City of Kennesaw*,
    820 F.2d 1570 (11th Cir. 1987) ........................................................... 15

*Powell v. Carey Intern., Inc.*,
   547 F. Supp. 2d 1281 (S.D. Fla. 2008)................................................................16

*Ramos v. Goodfellas Brooklyn's Finest Pizzeria, LLC*,
   2009 WL 2143628 (S.D. Fla. 2009)...................................................................15

*Reeves v. Astrue*,
   526 F.3d 732 (11th Cir. 2008) .........................................................................22

*Roberts v. Carter*,
   350 So. 2d 78 (Fla. 1977) ................................................................................17

*Sable v. Morgan Sangamon P'ship*,
   280 B.R. 217 (N.D. Ill. 2002) ...........................................................................7

*Saia Motor Freight Line, Inc. v. Reid*,
   930 So. 2d 598 (Fla. 2006) ..............................................................................13

*Studley v. Boylston Nat'l Bank*,
   229 U.S. 523 (1913) .......................................................................................22

*United States v. Norton*,
   717 F.2d 767 (3d Cir. 1983) ............................................................................22

*United States v. Ron Pair Enters.*,
   489 U.S. 235 (1989) .......................................................................................23

*Wade v, Dolgencorp, LLC*,
   2009 WL 8630725 (M.D. Fla. 2009).................................................................25

*Wilmington Trust Co. v. Manufacturers Life Ins. Co.*,
   749 F.2d 694 (11th Cir. 1985) .........................................................................17

*Woods v. Barnett Bank of Ft. Lauderdale*,
   765 F.2d 1004 (11th Cir. 1985).........................................................................16

**STATUTES**

11 U.S.C. § 303(i) ...............................................................................................*passim*

11 U.S.C. § 303(b) .............................................................................................4, 23

11 U.S.C. § 303(h) ...............................................................................................29

11 U.S.C. § 330.....................................................................................................28

11 U.S.C. § 523(d) ...............................................................................................18

11 U.S.C. § 553.....................................................................................................22

28 U.S.C. § 158(a) ........................................................................................................... 1

28 U.S.C. § 2412(d) ....................................................................................................... 14

**RULES**

Local Bankruptcy Rule 7054-1 ................................................................................. 12, 13

Fed. R. Bankr. P. 7054(a) ............................................................................................ 12

Fed. R. Bankr. P. 8020 ................................................................................................ 18

Fed. R. Civ. P. 54 ........................................................................................................ 12

Fed. R. App. P. 38 .................................................................................................. 17, 18

**OTHER AUTHORITIES**

H.R. Rep. No. 95-595 (1977), reprinted in 1978 U.S.C.C.A.N. 5963 ........................................ 24

S. Rep. No. 95-989 (1978), reprinted in 1978 U.S.C.C.A.N. 5787 ............................................ 24

## BASIS OF JURISDICTION

Appellants[1] seek review of the Bankruptcy Court's Order Determining Reasonable Amounts of Attorneys' Fees and Costs Recoverable Against Petitioning Creditors, Pursuant to 11 U.S.C. § 303(i)(1) (the "Fee Order").  BR-461.[2]  This Court has jurisdiction pursuant to 28 U.S.C. § 158(a)(1), which provides that the district courts of the United States "shall have jurisdiction to hear appeals from final judgments, orders, and decrees . . . of bankruptcy judges."[3]

## INTRODUCTION AND STATEMENT OF ISSUES

The Bankruptcy Court awarded Appellee $1,034,295.45 in fees and $39,019.37 in costs (less some minor cost deductions to be determined) for legal work performed in (1) obtaining dismissal of an involuntary chapter 7 bankruptcy petition filed against Appellee, (2) defending appeals from the order dismissing the bankruptcy petition, (3) seeking an award of fees and costs for the foregoing work, and (4) seeking damages for the alleged bad faith filing of the involuntary petition.  The Bankruptcy Court did not wait to see whether Appellee will prevail on his pending damages claims against Appellant.  At this stage, Appellee has not proven liability or

---

[1] Appellants are DVI Receivables XIV, LLC, DVI Receivables XVI, LLC, DVI Receivables XVII, LLC, DVI Receivables XVIII, LLC, DVI Receivables XIX, LLC, DVI Funding, LLC (the "Petitioning Creditors"), Lyon Financial Services, Inc. ("Lyon") and U.S. Bank N.A. ("USB").  During the pendency of the involuntary bankruptcy case, Lyon was a second tier subsidiary of USB.  As a result of internal mergers occurring after the dismissal of the involuntary bankruptcy case, Lyon has been merged into USB.  *See* AR-351, Comp. Ex. E. As a result of the merger, Lyon and USB are now a single party.

[2] Citations to record items are to the docket numbers of the items.  "BR" refers to record items in the chapter 7 bankruptcy case (Case No. 09-13196-BKC-AJC), and "AR" refers to record items in the adversary proceeding (Adv. Case No. 10-03812-AJC).  The transcripts of the pre-trial conference on August 15, 2012 and the trial on August 28, 2012 were transmitted to this Court and filed herein at DE-4 and DE-5 on this Court's docket and will be so cited.

[3] Appellee Maury Rosenberg ("Appellee") asserts that the Fee Order is a final order. Appellants disagree but have filed this appeal in an abundance of caution to avoid waiving their appellate rights.  No argument or statement herein should be deemed an admission by Appellants that the Fee Order is a final order.

damages.  Yet, the Bankruptcy Court awarded Appellee hundreds of thousands in fees for this work.  Appellee's damages claims are scheduled for jury trial in January 2013.[4]  Appellants requested that the Bankruptcy Court continue the hearing on fees until after the conclusion of the entire case.  This request was denied by the Bankruptcy Court.[5]

The issues on this appeal fall into six categories.  First, whether Appellee sought fees and costs on a timely basis.  Second, whether the Bankruptcy Court should have waited until resolution of the entire case before ruling on fees and costs.  Third, whether 11 U.S.C. § 303(i)(1) allows the Bankruptcy Court to award fees incurred (i) in appellate proceedings, (ii) litigating damages claims, and (iii) to recover fees (*i.e.*, "fees on fees").  Fourth, whether the Bankruptcy Court should have entered a judgment for fees and costs in favor of Rosenberg prior to adjudicating Appellant USB's setoff defense.  Fifth, whether 11 U.S.C. § 303(i)(1) authorizes judgments for fees against parties other than the petitioning creditors.  And, finally, sixth, whether the fees awarded were unreasonable.

## **STANDARD OF REVIEW**

The material facts are not in dispute except for certain facts relating to the reasonableness of the amount of fees awarded.  This appeal concerns primarily issues of law subject to *de novo* review.  *In re Sublett*, 895 F.2d 1381, 1383-84 (11th Cir. 1990); *In re Verola*, 336 B.R. 547, 549 (S.D. Fla. 2004).

---

[4] Appellee filed a single complaint that includes claims for attorneys' fees and costs as well as claims for actual and punitive damages.  Under the applicable statute, 11 U.S.C. § 303(i), Appellee is entitled to recover damages proximately caused by the involuntary petition if Appellee can prove "bad faith."  On Appellants' motion, the reference of the damages claims to the Bankruptcy Court was withdrawn, based on Appellee's jury trial demand, but the claims for fees and costs were referred to the Bankruptcy Court.  *See* Corrected Order Granting Defendants' Motion to Withdraw Reference for Jury Trial as to Appellee's Section 303(i)(2) Claims Only (the "Withdrawal Order").  AR-439.

[5] The request for a continuance was made during a telephonic pre-trial conference on August 15, 2012.  *See* DE-4, p. 4; DE-5, p. 8.

## STATEMENT OF THE CASE

### Procedural History and Rulings Below

On August 21, 2009, the Bankruptcy Court entered an order (the "Dismissal Order") (BR-96), which dismissed an involuntary chapter 7 bankruptcy petition (the "Involuntary Petition")[6] that was filed against Maury Rosenberg, the Appellee,[7] by the Petitioning Creditors. Rosenberg's debts to the Petitioning Creditors arise from an Individual Limited Guaranty under which Rosenberg guarantied the payment of amounts due under securitized equipment leases held by the Petitioning Creditors. *Id.*, pp. 5-6, 10-11. Jane Fox, an employee of Lyon, the servicer for the Petitioning Creditors, signed the Involuntary Petition on behalf of the Petitioning Creditors. *Id.*, pp. 13-14. USB was the Trustee for investors who purchased notes issued by the Petitioning Creditors. The equipment leases were pledged to USB, as Trustee, as collateral for the notes. *Id.*, pp. 6-7. When the Involuntary Petition was filed, USB was the ultimate parent of Lyon. *Id.*, p. 8. USB did not sign the Involuntary Petition or serve as a Petitioning Creditor. *Id.*, p. 15. As noted, however, Lyon was merged into USB after the events at issue herein.

In dismissing the Involuntary Petition, the Bankruptcy Court determined, among other things, that the Petitioning Creditors were not real parties in interest because the lease payments

---

[6] The Involuntary Petition was amended twice but the amendments are not relevant to the issues on this appeal.

[7] Hereafter, Appellee will be referred to by his name. The Involuntary Petition against Rosenberg was filed concurrently with separate involuntary petitions against two entities that he controlled: National Medical Imaging, LLC ("NMI") and National Medical Imaging Holding, LLC ("Holding"). All three petitions were filed in the Eastern District of Pennsylvania, where NMI and Holding conducted business. Rosenberg filed a motion to change the venue of his individual bankruptcy case to Miami, asserting that he had relocated from the Philadelphia area to Miami. The Petitioning Creditors did not oppose this motion, and it was granted. The NMI and Holding cases stayed in the Eastern District of Pennsylvania. Following the dismissal of the Involuntary Petition against Rosenberg, the Bankruptcy Court for the Eastern District of Pennsylvania, applying principles of collateral estoppel, dismissed the involuntary petitions against NMI and NMI Holding. *See* Case No. 08-17351-JKF (DE 183) & Case No. 08-17348-JKF (DE 174).

3

were being used to pay the note holders of the Petitioning Creditors, and the Petitioning Creditors lacked any economic interest in the leases.  The Bankruptcy Court also determined that, based on the wording of Rosenberg's Limited Guaranty, Rosenberg's debt was owed to Lyon, as "Agent" for the Petitioning Creditors, or to USB, the Trustee for the note holders, but not to the Petitioning Creditors.  The Bankruptcy Court reached the conclusion that Rosenberg owed a single debt to a single creditor, either Lyon or USB.  *Id*., p. 33.  It also concluded that the debt was in bona fide dispute and contingent.  *Id*., pp. 33-34.  Based on these rulings, the Bankruptcy Court dismissed the Involuntary Petition.  *Id*., p. 34.

The Bankruptcy Court did not address the issue of whether the Involuntary Petition was filed in "bad faith."  That issue was reserved for later determination.  BR-96, p. 34.  The only issue resolved by the Bankruptcy Court was whether the Petitioning Creditors were eligible to file the Involuntary Petition based on the requirements set forth in 11 U.S.C. § 303(b)(1).[8]  Thus, the issue before the Bankruptcy Court was a narrow one:  whether the Petitioning Creditors satisfied the statutory eligibility requirements.  This inquiry turned mainly on the structure of the securitization and on the roles played by the DVI entities, Lyon and USB in that structure.

The Petitioning Creditors appealed the Dismissal Order to this Court.  This Court (Judge Moore) affirmed the Bankruptcy Court's decision with the exception of the Bankruptcy Court's ruling that the debts owed by Rosenberg are contingent in nature. The reversal of the Dismissal Order on this one issue did not change the result.  The Involuntary Petition remained dismissed, based on the several other grounds for dismissal that were affirmed.  Thereafter, the Petitioning

---

[8] To be eligible to file an involuntary bankruptcy petition, the creditors must hold debts that meet a certain dollar threshold and that are not subject to bona fide dispute.  In addition, unless the debtor has fewer than 12 creditors, it takes three creditors to file an involuntary petition.  *See* 11 U.S.C. § 303(b).

Creditors filed a further appeal to the United States Court of Appeals for the Eleventh Circuit. The Eleventh Circuit affirmed Judge Moore's decision.

On October 29, 2009, Rosenberg filed a motion seeking an award of fees, costs and damages against the Petitioning Creditors (the "Fee Motion"). In the Fee Motion, he also sought an award against the following additional parties he contended were responsible for the Involuntary Petition: (a) Lyon, USB and Fox, (b) BG Management, Inc., a consulting firm engaged by Lyon, and BG's President, Robert Brier, and (c) the law firm of Flamm Boroff & Bacine, P.C., Lyon's counsel, and one of its attorneys, Robert Pinel. The Bankruptcy Court, after conducting a status conference on the motion, entered an order directing Rosenberg to replace his motion with an adversary complaint and to serve the adversary complaint on all the new parties, in order for the Court to obtain jurisdiction over them. BR-126. Rosenberg filed the Adversary Complaint (AR-1) on December 27, 2009 and thereafter served process on the new parties.

All of the defendants moved to dismiss the Adversary Complaint. *See* AR-17; AR-18 & AR-21. After conducting a hearing, the Bankruptcy Court, based on federal preemption, dismissed Rosenberg's state law claims alleging abuse of process and malicious prosecution. AR-165; AR-166 & AR-168. In addition, the Bankruptcy Court dismissed Rosenberg's 11 U.S.C. § 303(i)(1) and (2) claims against all defendants other than the Petitioning Creditors, Lyon, USB and Fox. *Id.* Thereafter, the Petitioning Creditors, Lyon, USB and Fox filed an Answer and Affirmative Defenses (AR-210) denying many of the allegations of the Complaint and raising several affirmative defenses including setoff. The Bankruptcy Court thereafter denied motions for partial summary judgment filed by both sides, finding the existence of issues of fact. AR-408-410.

On March 12, 2012, Rosenberg filed a Demand for Jury Trial (AR-152) and, on May 21, 2012, Lyon, USB and Fox filed a Motion to Withdraw Reference (AR-257). Rosenberg attempted to withdraw his jury demand (AR-269) and opposed withdrawal of reference (AR-330). On August 10, 2012, this Court (Judge Seitz) granted in part the Motion to Withdraw Reference and entered the Withdrawal Order (AR-439).

As set forth in the Withdrawal Order, Judge Seitz concluded that Rosenberg's claims for damages, pursuant to 11 U.S.C. § 303(i)(2), are analogous to common law claims for malicious prosecution and, therefore, triable by jury. *Id.*, p. 3. She withdrew the reference as to the Section 303(i)(2) damages claims. On the other hand, Judge Seitz concluded that Rosenberg's claims for attorneys' fees and costs, pursuant to 11 U.S.C. § 303(i)(1), are not jury triable. She referred the Section 303(i)(1) claims to the Bankruptcy Court. *Id.*, p. 3-4.

Following entry of the Withdrawal Order, the Bankruptcy Court denied a request by the Petitioning Creditors, Lyon, USB and Fox to delay the trial on the fee and cost claims until after conclusion of the jury trial on the damages claims. DE-4, pp. 4-5. The Bankruptcy Court decided to proceed apace and entered an order setting a trial to determine (1) whether to award attorneys' fees and the amount to be awarded, (2) whether to award costs and the amount to be awarded, and (3) who may be held liable for attorneys' fees and costs. DE-4, p. 11; AR-461, p. 5. The Bankruptcy Court advised the parties that it would not be trying the bad faith issue, and would not receive evidence on that issue, because the issue was reserved for jury trial. DE-4, p. 5; AR-461, pp. 5-6.

Appellants wanted to try the damages claims before a hearing on attorneys' fees for two main reasons. As the Bankruptcy Court noted, the statute does not require a finding of bad faith to award attorneys' fees and costs to a debtor that prevails in obtaining the dismissal of an

6

involuntary petition.   Nevertheless, many bankruptcy courts, in exercising their discretion to award fees, consider the creditors' motives and purposes and the circumstances surrounding the filing of the petition.[9]   Appellants wanted to introduce evidence concerning their good faith but did not want to sacrifice their right to a jury trial by trying the good faith issue in the Bankruptcy Court.   Second, Appellants wanted to delay the fee hearing because Rosenberg may be unsuccessful on his damages claims.  If he is not successful, he will not be entitled to recover the fees he incurred pursuing the damages claims.  Alternatively, if he achieves only limited success, the result may impact the amount of fees awarded, if any.

An abbreviated trial on Rosenberg's claims for fees and costs took place on August 28, 2012.  DE-5, pp. 1-60.  Appellants stipulated to the accuracy, authenticity and admissibility of the invoices, billing narratives and time records (the "Billing Records") introduced into evidence by Rosenberg.  Appellants also stipulated that the billing rates charged by Rosenberg's attorneys and their legal assistants, as reflected in the Billing Records, are customary and appropriate billing rates for the kind of work performed and are consistent with rates charged by bankruptcy professionals of similar experience, skill and qualifications in the South Florida legal market. Appellants contended, however, that the amount sought for fees was excessive and unreasonable for a number of reasons, including the fact that Rosenberg had sought fees even for claims that were dismissed by the Court as legally insufficient.  Appellants also raised all of the substantive legal objections they now raise on this appeal.  The trial was a short one because there was no need for witness testimony.

---

[9] *See Higgins v. Vortex Fishing Systems, Inc.*, 379 F.3d 701, 708 (9th Cir. 2004); *In re Reid*, 854 F.2d 156, 160 (7th Cir. 1988) ("we believe that the presence or absence of bad faith will inform the exercise of the district court's discretion under § 303(i)"); *Sable v. Morgan Sangamon P'ship*, 280 B.R. 217, 221 (N.D. Ill. 2002); *In re Scrap Metal Buyers of Tampa, Inc.*, 253 B.R. 103, 110 (M.D. Fla. 2000); *In re DSC, Ltd.*, 387 B.R. 174, 178 (Bankr. E.D. Mich. 2008).

In the Fee Order, the Bankruptcy Court made a finding that Lyon, through its employee Fox, acted as an agent for the Petitioning Creditors in filing the Involuntary Petition.  AR-461, p. 8.  As conclusions of law, the Bankruptcy Court concluded that: (1) persons other than the Petitioning Creditors could be liable for fees and costs under 11 U.S.C. § 303(i)(1) under principles of agency law (*id.*, pp. 13-16); (2) it had authority to award Rosenberg fees and costs that had been incurred during appellate proceedings before this Court and the Eleventh Circuit (*id.*, p. 8); (3) it was appropriate to award fees and costs for services rendered in an adversary proceeding that was still pending and unresolved (*id.*, p. 12); and (4) it would defer consideration of Appellants' setoff defense until after the jury trial on Rosenberg's damages claims (*id.*, p. 13). The Bankruptcy Court also concluded that the Fee Motion had been filed timely.  *Id.*, p. 10, n. 4.

The Bankruptcy Court reduced a fee request of close to $1.1 million by only $20,000 for certain disallowed services[10] and ruled that, pursuant to 11 U.S.C. § 303(i)(1), Appellants were jointly and severally liable to Rosenberg for legal fees in the aggregate amount of $1,034,295.45. The Bankruptcy Court also awarded Rosenberg costs in the aggregate amount of $39,019.37, less an undetermined amount for costs associated with the disallowed services.  Finally, the Bankruptcy Court reserved jurisdiction to award Rosenberg additional fees and costs.  *Id.*, p. 21. The Bankruptcy Court did not enter judgment against Jane Fox, apparently accepting Appellants'

---

[10] Appellants argued that Rosenberg was seeking fees for work that had been unsuccessful, including the pursuit of state law claims against all of the original defendants and the pursuit of bankruptcy claims against the consulting firm and law firm defendants.  Although Rosenberg failed on these claims, he sought every penny of the hourly charges for the work involved.  Without citing to any specific portion of the record, the Bankruptcy Court attributed only $20,000 to this work and deducted this sum.  Appellants respectfully disagree with the Bankruptcy Court's assessment that all of the work relating to the state law claims, and the pursuit of federal claims against the consulting firm defendants and law firm defendants amounted to only $20,000.  Rosenberg was awarded fees for other work that was unsuccessful, including his initial motion for fees that was jurisdictionally defective, discovery disputes that he did not prevail on, and his efforts to prevent withdrawal of the reference.

position that Fox acted as an employee of Lyon in signing the Involuntary Petition on behalf of the Petitioning Creditors.

## Additional Material Facts

Most of the background facts relating to this dispute are set forth at pages 5-19 of the Dismissal Order (BR-96) and at pages 2-6 of the Fee Order (AR- 461) and are incorporated herein.[11]   The following additional facts concern the setoff issue and the reasonableness of the fees sought.

## Facts Relevant to Setoff Issue

In its Answer and Affirmative Defenses, USB asserted a setoff defense.  AR-210, p. 9.  In the Dismissal Order, the Bankruptcy Court determined that Rosenberg's guaranty obligation runs to either Lyon or USB.  BR-96, p. 33.  As noted earlier, USB and Lyon are now the same entity as a result of internal mergers that took place after the Involuntary Petition was dismissed. Accordingly, based on the Bankruptcy Court's ruling, Rosenberg's guaranty obligation is owed to USB.

USB has asserted that Rosenberg owes it $4,980,264.32, not including interest and attorneys' fees and costs, and that USB is entitled to assert a setoff in this amount against any amount USB or Lyon is determined to owe Rosenberg as a consequence of the filing of the Involuntary Petition.  *See* Answer and Affirmative Defenses (AR-210, p. 9); Motion for Leave to File Third Amended Involuntary Petition (BR-77, Ex. A, p. 2).

---

[11]   Appellant's Trial Exhibit Register was tendered to the Bankruptcy Court, and Appellants' trial exhibits were admitted into evidence, with the exception of Exhibit S, which concerned the setoff issue.  *See* DE-5, pp. 18-19.  But these documents did not make their way into the Bankruptcy Court docket and have not been transmitted to this Court as part of the record on appeal.  Appellants will take appropriate steps to assure that their Exhibit Register and their trial exhibits are made available to this Court as part of the record on appeal.

The Bankruptcy Court awarded fees and costs to Rosenberg but deferred ruling on the setoff defense.

## Facts Relevant to Reasonableness of Fees

Rosenberg requested that the Bankruptcy Court award attorneys' fees in the aggregate amount of $1,034,295.45 for services rendered by two law firms, Genovese Joblove & Battista, P.A. ("GJ&B") ($909,593.45) and Weir & Partners, P.C. ("W&P") ($124,702.00).  AR-461, pp. 17-18.

Of the total amount of fees requested by both firms, approximately $335,000.00 was for the effort to obtain the dismissal of the Involuntary Petition.[12]  The Dismissal Order was entered on August 21, 2009.  This $335,000 figure includes all of the invoices of GJ&B for work performed through August 31, 2009, totaling $233,094.95.  *See* AR-384, ¶ 2.  It also includes all of W&P's charges for work it performed through September 30, 2009 (a month after the entry of the Dismissal Order), totaling $101,820.50.  *See* AR-16, Appendix (Comp. Ex. A, ¶ 5).  The remaining work performed by these firms was for the two appeals and the efforts to recover fees and damages.

The work performed by GJ&B relating to the appeals totals approximately $60,000.  This work is reflected on nine invoices included in Rosenberg's Trial Exhibit 202.[13]  The time

---

[12]  This $335,000 figure does not include the time spent by GJ&B in opposing the Petitioning Creditors' motion seeking reconsideration of the Dismissal Order or amendment of certain findings.  BR-99.  The Petitioning Creditors were partly successful on this motion because the Bankruptcy Court amended certain findings objected to by the Petitioning Creditors. BR-129.  In any event, the time incurred by GJ&B relating to the reconsideration motion was not extensive.  On the other hand, the $335,000 includes some time devoted to research and analysis concerning the claims for fees and damages that was performed before the entry of the Dismissal Order.

[13]  Rosenberg introduced into evidence four trial exhibits containing Billing Records. They are Exhibits 202 and 202A, which contain the time charges of GJ&B, and Exhibits 200 and 201, which contain the time charges of W&P.  (Appellants designated these exhibits for

devoted by GJ&B to the appeals can be ascertained because GJ&B created separate billing numbers for the appeals (matters 10094-002 and 10094-004).  *See also* AR-384, Ex. 1.  The work performed by W&P relating to the appeals is not quite as easy to identify because W&P did not set up separate billing numbers for the appeals.  However, W&P's Billing Records, when reviewed line-by-line, show only approximately $2,500 charged for work on the appeals.  *See* Rosenberg's Tr. Ex. 200 & Tr. Ex. 201; AR-383.

Thus, the work performed in obtaining the dismissal and in defending the appeals, considering both firms, totaled approximately $400,000.  This means that more than $600,000 in time charges were incurred for work performed in seeking fees, costs and damages, first by filing a motion (BR-101) and then by filing the Adversary Complaint (AR-1), which superseded the motion.  Of the total fees requested, then, approximately 60% was for work unrelated to obtaining the dismissal of the Involuntary Petition and to the defense of appeals that sought to overturn the dismissal.  Even if these figures are off by a few percentage points, it is clear that the majority of the fees awarded to Rosenberg by the Bankruptcy Court was for work in seeking fees and damages.

Other facts concerning the reasonableness of the fees sought are set forth in Point VI below.

---

inclusion in the record, but they have not yet been transmitted to this Court.  Appellants will take steps to assure that this Court has the benefit of these exhibits.)  Additionally, earlier in the case, Rosenberg moved for partial summary judgment as to fees and costs.  In support, he filed Declarations of his attorneys attaching billing records.  These Declarations and their attachments set forth the amounts of fees charged by the two firms for the work performed in obtaining the dismissal of the Involuntary Petition.  *See* AR-16 & Appendix; AR-384 & Exhibits.

## ARGUMENT

### I.       THE FEE MOTION WAS NOT FILED TIMELY.

11 U.S.C. § 303(i)(1) does not provide a specific time period to file a motion seeking fees and costs after an involuntary bankruptcy petition is dismissed.  Federal Rule of Civil Procedure 54(d)(2), which provides that a motion for fees must be made within 14 days of entry of the final order, is not applicable because it is not incorporated into the Federal Rules of Bankruptcy Procedure.[14]  As a result, in the Bankruptcy Court for the Southern District of Florida, the time to file a motion for fees is governed by Local Bankruptcy Rule 7054-1(F), which provides that any fees and costs that are not taxable by the clerk "shall be considered only upon motion to the court filed **within 20 days** after entry of judgment."

Rosenberg did not file the Fee Motion within 20 days after entry of the Dismissal Order, nor did he ever request or obtain an extension of time for such filing.  Instead, he filed his Fee Motion on October 29, 2009 -- **69 days** after the entry of the Dismissal Order.  Because the Fee Motion was not sufficient to obtain jurisdiction over Lyon, USB, Fox and other parties, Rosenberg was required to file the Adversary Complaint, which he did on December 27, 2010 -- **118 days** after the entry of the Dismissal Order.   Therefore, Rosenberg's first filing, a jurisdictionally defective motion, was filed **49** days late, and his jurisdictionally adequate filing, the Adversary Complaint, was filed **98** days late.

Because Rosenberg's Fee Motion was not filed timely, the Fee Order should be reversed. In the Fee Order, the Bankruptcy Court addressed the issue of timeliness, but did not discuss Local Bankruptcy Rule 7054-1.  Instead, the Bankruptcy Court concluded that the Fee Motion

---

[14] *See* Fed. R. Bankr. P. 7054(a), which only incorporates Fed. R. Civ. P. 54(a)-(c), not subpart (d).

was timely filed because the Bankruptcy Court had reserved jurisdiction in the Dismissal Order to award fees and costs.  AR-461, p. 10, n. 4.

The Bankruptcy Court's reliance on its reservation of jurisdiction in the Dismissal Order is misplaced.  The Eleventh Circuit has confirmed that a reservation of jurisdiction in a judgment or order to award fees does not extend the applicable time period to move for fees and costs.  *See In re Walker*, 2009 WL 7906786 (11th Cir. 2009).  The rule is the same in the Florida state courts.  *Saia Motor Freight Line, Inc. v. Reid*, 930 So. 2d 598 (Fla. 2006).

Courts have been strict in concluding that motions for fees and costs must be filed within the time period specified in the applicable district court or bankruptcy court rule.  *See In re Inbar,* 1991 WL 97529 (D. Mass 1991) (affirming denial of motion for fees and costs pursuant to 11 U.S.C. § 303(i) on ground that motion was untimely pursuant to district court rule requiring motion for fees to be made within 30 days after final judgment); *In re Walker*, *supra*; *In re Section 20 Land Group, Ltd.*, 240 B.R. 812, 817 (Bankr. M.D. Fla. 2000) (fee motion filed outside 14-day period provided in Local Rule 7054-1 of the U.S. Bankruptcy Court for the Middle District of Florida was untimely).

Here, the original Fee Motion was filed 49 days late, and no extension of time was sought.[15]  The Bankruptcy Court erred when it failed to consider Local Bankruptcy Rule 7054-1 in determining the timeliness of the Fee Motion.  The Bankruptcy Court also erred when it relied upon its reservation of jurisdiction in the Dismissal Order.[16]  The approach taken by the

---

[15] Lyon and USB were served with Summonses and copies of the Adversary Complaint by mail on January 4, 2011, approximately a week after the Adversary Complaint was filed.  *See* AR-5.

[16] The Bankruptcy Court appears to have concluded that there was no unfair surprise since a fee motion was expected.  However, Local Rule 7054-1 does not provide an exception for cases in which the losing party may reasonably expect a fee motion.  Further, in this case,

Bankruptcy Court is counter to the strong policy of promoting uniformity and consistency in the application of rules of procedure.

## II.     THE BANKRUPTCY COURT SHOULD HAVE WAITED UNTIL THE ENTIRE CASE WAS RESOLVED BEFORE RULING ON ROSENBERG'S CLAIMS FOR ATTORNEYS' FEES AND COSTS.

The Bankruptcy Court erred by awarding fees even though the most significant claims alleged by Rosenberg were (and remain) unresolved.  As noted, 60% of the fees awarded to Rosenberg are attributable to his efforts to recover fees and damages in the still pending Adversary Proceeding.  The issues concerning Rosenberg's damages claims were (and remain) the most controversial and complex and have involved, by far, the most attorney time.  If Rosenberg had sought only fees and costs, most of the motion practice and discovery that consumed attorney time would have been avoided.

When it awarded fees *before* the resolution of the damages claims, the Bankruptcy Court acted contrary to the clear instructions of the Supreme Court and the Eleventh Circuit.

In *Commissioner v. Jean*, 496 U.S. 154 (1990), the Supreme Court addressed eligibility for attorney's fees under the Equal Access to Justice Act, 28 U.S.C. § 2412(d).  The Court explained that, with respect to fee-shifting statutes, a court should "treat a case as an inclusive whole." *Jean*, 496 U.S. at 161-62.  Most importantly, fees "should be excluded to the extent that the applicant ultimately fails to prevail in such litigation."  *Jean*, 496 U.S. at 163 n.10.

The determination of whether a party has prevailed can only be made at the end of the case.  With respect to Rosenberg's claim for damages, the "jury is still out" - literally.

Rosenberg took an unorthodox approach.  He sought fees and costs, not just against the Petitioning Creditors, but against Lyon, USB, Fox and other parties.  As discussed below, based on the statutory language authorizing fees against the "petitioners" (*see* 11 U.S.C. § 303(i)(1)) and the case law, Rosenberg's efforts to pursue additional parties were hardly routine or predictable.

Appellants believe that the jury will determine that they did not act in bad faith and will deny any claim by Rosenberg for damages.  In that circumstance, the Bankruptcy Court will have allowed Rosenberg to recover some $600,000 in fees in a case he lost.  Alternatively, the jury could return a small award, in which case, the Bankruptcy Court should consider, not just whether Rosenberg won, but whether the result justified incurring hundreds of thousands in fees.

Logic (and the Supreme Court) dictate that the result obtained in litigation is a critical factor in determining the appropriate amount of a fee award.  *See Hensley v. Eckerhart*, 461 U.S. 424, 434 & 438-39 (1983) (holding that the extent of a plaintiff's success is a "crucial" factor in determining the amount of a fee award, and where the plaintiff achieved only limited success, the court should reduce the award to an amount that is reasonable in relation to the result obtained); *Andrews v. U.S.*, 122 F.3d 1367, 1375 (11th Cir. 1997) (district court abused discretion by failing to give sufficient weight to plaintiff's limited success in determining CERCLA fee award; remanding for further reduction because district court's initial reduction by 78% was insufficient); *Popham v. City of Kennesaw*, 820 F.2d 1570, 1581 (11th Cir. 1987) (approving 67% reduction of lodestar amount of fee award to prevailing plaintiff under 42 U.S.C. § 1988 where plaintiff recovered small fraction of damages sought); *Ramos v. Goodfellas Brooklyn's Finest Pizzeria, LLC*, 2009 WL 2143628, *2 (S.D. Fla. 2009) (fee amount sought under FLSA, 19 times greater than amount plaintiff recovered, was "by any measure . . . beyond the range of reasonable"; district court's 25% reduction of fees not adequate in view of plaintiff's limited success; remanded for further 50% reduction due to limited success); *Brandt v. Magnificent Quality Florals Corp.*, 2011 WL 4625379 (S.D. Fla. 2011) (under FLSA, degree of success crucial is crucial in determining amount awarded to prevailing party; where results are limited, reduced fee award is appropriate).

"Failure to consider a prevailing party's degree of success when calculating a fee award constitutes an abuse of discretion." *Brandt* at *12 (citing *Andrews*, 122 F.3d at 1376). *See also Powell v. Carey Intern., Inc.*, 547 F. Supp. 2d 1281, 1297 (S.D. Fla. 2008) (fee reduction warranted where "plaintiffs [had] limited success notwithstanding the plethora of hours expended litigating this case"); *James v. Wash Depot Holdings, Inc.*, 489 F. Supp. 2d 1341 (S.D. Fla. 2007) (reducing fee award to prevailing party because of limited success).

The Bankruptcy Court awarded more than $500,000 in fees without knowing the result of the case. Its decision to forge ahead with a fee trial and grant an enormous award before the end of the case and without knowing the outcome is reversible error.

### III.   IT WAS ERROR TO AWARD (A) APPELLATE FEES, (B) FEES INCURRED IN PURSUING DAMAGES CLAIMS, AND (C) FEES ON FEES.

The general rule in American courts is that the prevailing party may not recover its attorneys' fees from the losing party. *Alyeska Pipeline Serv. Co. v. Wilderness Society*, 421 U.S. 240, 247 (1975); *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dept. Of Health & Human Resources*, 532 U.S. 598, 602 (2001). To depart from this rule, federal courts require "explicit statutory authority" indicating that Congress intended to allow the prevailing party to recover its fees. *Id.* (quoting *Key Tronic Corp. v. United States*, 511 U.S. 809, 819 (1994)); *Woods v. Barnett Bank of Ft. Lauderdale*, 765 F.2d 1004, 1014 (11th Cir.1985). The burden is on the party seeking fees to demonstrate, through explicit statutory language, that Congress "clearly intended to allow such recovery" of the fees sought. *Lewis v. Federal Prison Industries, Inc.*,

953 F.2d 1277, 1281 (11th Cir. 1992).  *See also Wilmington Trust Co. v. Manufacturers Life Ins. Co.*, 749 F.2d 694, 700 (11th Cir. 1985) (fee provisions are narrowly construed).[17]

Here, the Bankruptcy Court did not strictly construe 11 U.S.C. § 303(i)(1).  Instead, it construed the statute to allow fees for (a) appellate work, (b) damages claims, and (c) litigating over fees, despite the fact that the statute does not authorize recovery of any of these categories.

## Appellate Fees

Section 303(i)(1) does not explicitly grant bankruptcy courts authority to award appellate fees.  The "only authority for awarding discretionary appellate fees in bankruptcy appeals is Rule 38 [of the Federal Rules of Appellate Procedure]" and Rule 38 "empowers *only appellate courts, not bankruptcy courts* to award damages, attorney's fees, and other expenses incurred by an appellee in response to a frivolous appeal."  *In re Del Mission Ltd.*, 98 F.3d 1147, 1153 (9th Cir. 1996) (emphasis in original).  *See* Fed. R. App. P. 38 (appellate attorneys' fees may be awarded by "a court of appeals . . . after a separately filed motion or notice from the court and reasonable opportunity to respond").

Rather than ask this Court or the Eleventh Circuit to award his appellate fees, Rosenberg ignored Federal Rule of Appellate Procedure 38 and asked the Bankruptcy Court to grant such fees.  Section 303(i)(1) does not grant bankruptcy courts the authority to award appellate fees – such authority is within the exclusive purview of the federal appellate courts.  *See In re Allen-Main Assoc., Ltd.*, 229 B.R. 577, 578-79 (Bankr. D. Conn. 1999) (the Bankruptcy Code, "which

---

[17] Florida courts follow the same approach.  Statutes and contracts that deviate from the American Rule are strictly construed.  *See P.A.G. v. A.F.*, 602 So.2d 1259, 1260 (Fla. 1992); *Florida Patient's Compensation Fund v. Rowe*, 472 So.2d 1145, 1147-48 (Fla. 1985); *Main v. Benjamin Foster Co.*, 141 Fla. 91, 192 So. 602, 604 (1939); *Brite v. Orange Belt Securities Co.*, 133 Fla. 266, 182 So. 892 (1938).  *See also Gershuny v. Martin McFall Messenger Anesthesia Professional Ass'n*, 539 So.2d 1131 (Fla. 1989); *Roberts v. Carter*, 350 So. 2d 78, 78-79 (Fla. 1977).

grants bankruptcy courts authority to award prevailing parties attorney's fees and costs, does not authorize the bankruptcy court to award such fees and costs incurred on an appeal" and "[n]o such authority can reasonably be extracted from the [Code's] provisions.").

As with other federal statutes providing for prevailing party fees, 11 U.S.C. § 303(i)(1) authorizes the trial court to award fees incurred at the trial court level only. *See Higgins v. Vortex Fishing Systems, Inc.*, 379 F.3d 701, 708-09 (9th Cir. 2004) ("§ 303(i)(1), which expressly grants discretionary authority to award fees at the trial level, should not be construed to grant similar authority to award fees at the appellate level"); *In re Del Mission*, 98 F.3d at 1154; *In re Vasseli*, 5 F.3d 351, 353 (9th Cir. 1993) (rejecting argument that authority for bankruptcy court to grant appellate fees can be implied into express grant of power to award fees incurred in bankruptcy court proceeding); *see also Allen-Main*, 229 B.R. at 578-79.

Only Congress can make the determination to delegate to bankruptcy courts the power to award appellate attorneys' fees. *Higgins*, 379 F.3d at 709 n.3. Even "an appellate court [which] has the authority to award fees for appellate representation, does not have authority to delegate this power to a bankruptcy court." *Vasseli*, 5 F.3d at 353.

Courts "should not [infer] from [a bankruptcy court's express discretionary authority to award fees at the trial level] a similar authority to award fees at the appellate level." *Higgins*, 379 F.3d at 709 (quoting *In re Del Mission Ltd.*, 98 F.3d at 1154). *See also In re Law Center*, 304 B.R. 136, 140 (Bankr. E.D. Pa. 2003) (court "decline[d] to read an authorization to impose fees and costs for services in the appellate arena into Section 303(i) and thereby overrid[e] the application of both [Bankruptcy] Rule 8020 and [Appellate] Rule 38"); *see also In re Williams*, 224 B.R. 523, 532 (2d Cir. BAP 1998) (denying appellee's request for fees as "[Bankruptcy] Code § 523(d) alone does not authorize the bankruptcy court to award attorneys' fees for

appellate representation").

Despite the weight of authority to the contrary,[18] some bankruptcy courts have granted appellate fees under Section 303(i).  *See In re Atlas Machine and Iron Works, Inc.*, 190 B.R. 796, 803-04 (Bankr. E.D. Va. 1995).  *See also In re John Richards Homes Bldg. Co.*, 405 B.R. 192, 216-17 (E.D. Mich. 2009) (adopting magistrate's report and recommendation finding that, for policy reasons, appellate fees should be recoverable under Section 303(i)).  However, in these cases, the courts concluded that appellate fees are recoverable under the statute without discussing the issue of which court, the bankruptcy court or the appellate court, should make the decision.  In other words, these decisions focus on whether appellate fees are recoverable, not on the authority of the bankruptcy courts to award appellate fees.  *See Law Center*, 304 B.R. at 138-39 (noting this distinction);  *Allen-Main*, 229 B.R. at 579 (same).

The notion that appellate courts should decide appellate fees is not merely form over substance.  One or both of the two appellate courts that were involved in this case, if presented with a request for appellate fees, may have concluded that the appeal had sufficient merit to deny appellate fees.  The award of fees is discretionary.  In many cases, appellate courts deny fees to the prevailing party.  There is a distinction between a decision to affirm a lower court's order, which is often based on a deferential review standard, and a decision to award appellate fees to

---

[18] In cases decided under other federal statutes that contain provisions authorizing fees to the successful party, federal courts require that the prevailing party apply to the appellate courts for appellate fees.  *See Flitton v. Primary Residential Mortg., Inc.*, 614 F.3d 1173 (10th Cir. 2010) (district court lacked jurisdiction to award appellate attorneys' fees pursuant to the Civil Rights Act as application for appellate fees must be made to the court of appeals); *Hoyt v. Robson Companies, Inc.*, 11 F.3d 983, 985 (10th Cir. 1993) (discussing several federal statutes authorizing prevailing party attorneys' fees and concluding that appellate fees can be granted only after a proper application to an appellate court; district courts lack jurisdiction to award appeal-related attorneys' fees); *In re IBT Intern., Inc.*, 2012 WL 3264243, *7, n.12 (9th Cir. BAP 2012) (a statutory provision providing for award of appellate fees does not change the fact that bankruptcy courts lacks jurisdiction to award appellate fees).

the prevailing party.  Rosenberg did not give the appellate courts the opportunity to decide whether to award appellate fees.

For the reasons set forth above, the Bankruptcy Court should not have awarded Rosenberg fees and costs relating to the appeals.

### Fees for Pursuing Damages Claims

It was also error for the Bankruptcy Court to award Rosenberg fees incurred in his ongoing efforts to recover damages.  *See In re Pierce*, 165 B.R. 252, 256 (Bankr. N.D. Ind. 1994) (not allowing fees incurred in pursuing unsuccessful damages claim, which court described as a "largely independent claim" that was "not devoted to resisting the petition but rather to the effort of obtaining an affirmative recovery of actual and punitive damages from the petitioners pursuant to § 303(i)(2)").

The few cases that have awarded fees for the pursuit of Section 303(i)(2) damages claims have done so only after the damages claims were adjudicated and only upon a finding of bad faith or malice on the part of the petitioning creditors.  *See In re Landmark Distributors, Inc.*, 195 B.R. 837 (Bankr. D.N.J. 1996); *In re Advance Press & Litho, Inc.*, 46 B.R. 700, 703-04 (Bankr. D. Colo. 1984).  Here, the Bankruptcy Court awarded an enormous quantum of fees incurred in pursuing damages claims that are still pending and unresolved.  No court has done that before.

Even if Rosenberg prevails on his damages claims, he should not be awarded prevailing party fees for pursuing them.  Section 303(i)(1) must be strictly construed.  Section 303(i)(1) speaks in terms of seeking a judgment for fees and costs following the dismissal of the involuntary petition.  The logical reading is that only fees and costs incurred in obtaining the dismissal are recoverable.  There is no suggestion in the statute's wording that the debtor can

choose to embark on damages claims and then recover, if he prevails, not just the damages, but also his attorneys' fees.

The statute could easily have been drafted to provide for recovery of fees and costs both in obtaining the dismissal of the involuntary petition and in the later pursuit of damages for a bad faith filing.  Absent explicit language allowing post-dismissal fees incurred in pursuing damages claims, the American Rule applies.

### Fees on Fees

It was also error for the Bankruptcy Court to award Rosenberg fees incurred in his efforts to recover attorneys' fees.  *See In re Fox*, 171 B.R. 31 (Bankr. E.D. Va. 1994) (not allowing attorneys' fees with respect to the controversy over the alleged debtor's fees).  Despite the presumption in favor of the American Rule and the requirement of explicit statutory authority, some courts have allowed "fees on fees" under Section 303(i)(1) on the premise that a prevailing debtor's fee award should not be diminished by the fees incurred in obtaining the fee award.[19] But here, Rosenberg did not simply file a garden variety motion seeking fees against the Petitioning Creditors for the work performed leading to the dismissal of the involuntary petition. Instead, he chose to embark on a much broader campaign to seek damages against multiple parties.  This effort, which was partly unsuccessful, engendered a substantial amount of litigation and enormous fees.   Under the facts presented here, it was error for the Court to award Rosenberg "fees on fees."

---

[19] *See In re Southern California Sun-Belt Developers, Inc.*, 608 F.3d 456, 462-63 (9th Cir. 2010) (allowing recovery of fees incurred in litigating claim for fees).

## IV.   IT WAS ERROR TO ENTER AN ORDER AWARDING FEES AND COSTS TO ROSENBERG BEFORE ADJUDICATING USB'S RIGHT OF SETOFF.

The Bankruptcy Court reserved ruling on whether setoff is allowable.  AR-461, p. 13. The case law in this District is that setoff is available under 11 U.S.C. § 303(i).[20]  In *In re Apache Trading Group, Inc.*, 229 B.R. 887, 890 (Bankr. S.D. Fla. 1999), the Bankruptcy Court allowed setoff of a creditor's claim against an attorneys' fee award under 11 U.S.C. § 303(i).  The court noted that there were only three reported decisions on setoff under 11 U.S.C. § 303(i).  It disagreed with the reasoning in *In re Schiliro*, 72 B.R. 147 (Bankr. E.D. Pa. 1987) and agreed with the reasoning in *In re Better Care, Ltd.*, 97 B.R. 405 (Bankr. N.D. Ill. 1989) and *In re K.P. Enterprise*, 135 B.R. 174 (Bankr. D. Me. 1992).  In *Better Care* and *K.P. Enterprise*, the courts concluded that fees awarded under Section 303(i) are owed to the debtor and not to the attorney for the debtor, and, therefore, the mutuality required for setoff exists.[21]  *Better Care*, 97 B.R. at 415; *K.P Enterprise*, 135 B.R. at 185.

In *Apache Trading*, the court did not decide whether creditors who act in bad faith may assert a setoff.  229 B.R. at 890.  Here, this issue was not presented because the Bankruptcy

---

[20] The Adversary Proceeding was filed after dismissal of the Involuntary Petition, and Rosenberg was never adjudicated to be a bankrupt.  Therefore, bankruptcy law does not come into play in determining USB's setoff rights.  But, setoff is available even against debtors who are in bankruptcy.  Section 553 of the Bankruptcy Code incorporates and preserves in bankruptcy the right of setoff available at common law.  *United States v. Norton*, 717 F.2d 767, 772 (3d Cir. 1983).  The equitable right of setoff has long been recognized in bankruptcy.  *See Libby v. Hopkins*, 104 U.S. 303 (1881). The rule allows parties that owe mutual debts to state the accounts between them, to subtract one from the other and pay only the balance.  The rule is grounded on the absurdity of "making A pay B when B owes A."  *Studley v. Boylston Nat'l Bank*, 229 U.S. 523, 528 (1913).

[21] The Supreme Court has reached the same conclusion in deciding that prevailing party fees awarded under the Equal Access to Justice Act are subject to setoff for amounts owed to the Government.  *See Astrue v. Ratliff*, 130 S. Ct. 2521, 2526-27 (2010) (mutuality exists because the fee award is to the party, not to the party's attorney); *Reeves v. Astrue*, 526 F.3d 732, 738 (11th Cir. 2008) (same).

Court determined that it did not need to find bad faith to award fees and costs and it "made no findings or conclusions relevant to the bad faith issue."[22]  AR-461, p. 10.  USB has a valid right of setoff.  The Bankruptcy Court should not have awarded any fees and costs to Rosenberg before adjudicating USB's setoff defense.

### V.    IT WAS ERROR TO AWARD FEES AND COSTS AGAINST LYON AND USB BECAUSE THEY ARE NOT PETITIONING CREDITORS.

11 U.S.C. § 303(i) states that a bankruptcy court may award attorneys' fees or costs against the "petitioners."  Because Lyon and USB were not "petitioners," they cannot be held liable for Rosenberg's fees and costs.[23]

The interpretation of a statute begins "with the language of the statute itself."  *United States v. Ron Pair Enters.*, 489 U.S. 235, 241 (1989); *In re Hill*, 562 F.3d 29, 32 (1st Cir. 2009). If the statute's language is plain, and the meaning not absurd, the function of courts is to enforce the statute according to its literal terms.  *Lamie v. United States Trustee*, 540 U.S. 526, 534 (2004); *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 6 (2000); *Ron Pair*, 489 U.S. at 242.

The meaning of "petitioner" is clear.  Section 303(b) provides that an involuntary petition may be filed by persons who assert that they are creditors of the debtor.  Lyon asserted that it was the servicer for entities that were Rosenberg's creditors.  Lyon never asserted that it was

---

[22] Absent statutory language abrogating the right of setoff in cases involving bad faith, setoff should be available in those cases as well.  *See In re Rush-Hampton Industries, Inc.*, 98 F.3d 614, 617-18 (11th Cir. 1996) (though IRS violated automatic stay in exercising setoff against 1979 tax refund of amounts owed for 1978, bankruptcy court erred in depriving IRS of its setoff right as a sanction for its stay violation).

[23] In the damages case pending before Judge Seitz, Case No. 12-CV-22275, Judge Seitz recently entered an order determining that the Bankruptcy Court's ruling on this issue must be given collateral estoppel effect.  Judge Seitz also expressed agreement with Judge Cristol's ruling, based on the unique facts of this case.  *See* DE 60 in Case No. 12-CV-22275.  Appellants respectfully disagree and raise the issue again here because they do not wish to waive their appellate rights.

Rosenberg's creditor and did not list itself as one of the petitioners. The DVI entities were listed as the petitioners, and the Involuntary Petition was dismissed because of this very fact – the Bankruptcy Court concluding that the DVI entities were not real parties in interest.

At the time of the filing of the Involuntary Petition, USB was a separate entity from Lyon. USB was not listed as a petitioner, and its name does not even appear on the Involuntary Petition. There was no evidence that USB participated in the filing of the Involuntary Petition or even knew about it. USB clearly was not a petitioner.

Although Section 303(i) uses the term "petitioner" rather than "petitioning creditor," the former term is simply short hand for the latter. Congress made clear that it was creating a remedy against the <u>petitioning creditors.</u> The House and Senate Reports on the bill that was enacted as the 1978 Bankruptcy Code both state: "[I]f a **petitioning creditor** filed the petition in bad faith, the court may award the debtor any damages proximately caused by the filing of the petition. These damages may include such items as loss of business during and after the pendency of the case, and so on." H.R. Rep. No. 95-595 at 324 (1977), reprinted in 1978 U.S.C.C.A.N. 5963, 6280; S. Rep. No. 95-989 at 34 (1978), reprinted in 1978 U.S.C.C.A.N. 5787, 5820 (identical text) (emphasis added).

The Bankruptcy Court's approach is inconsistent with the few reported cases that have considered this issue. At least four courts have rejected the notion that the petitioners who may be held liable include agents and other third parties. *See In re Glannon,* 245 B.R. 882, 892-93 (D. Kan. 2000) (concluding that, by its plain terms, 11 U.S.C. § 303(i) allows the court to grant judgment only against the petitioning creditors); *In re HSR Associates*, 162 B.R. 680, 683-84 (Bankr. D.N.J. 1994) (ruling that principal of a petitioning creditor can be held liable for damages under § 303(i) only if the debtor proves facts allowing piercing the corporate veil); *In re*

*Denver Comm. Dev. Credit Union*, 2004 WL 2274961 (Bankr. D. Colo. Oct. 5, 2004) (refusing to impose fees and damages against an agent of a corporate creditor, concluding, upon review of the statute, that the statute only allows an award against the petitioning creditors themselves); *In re Childs Co.*, 52 F. Supp. 89 (S.D.N.Y. 1943) (under predecessor version of 11 U.S.C. § 303(i), holding that, after dismissal of an involuntary petition, court may not rely on doctrine of respondeat superior to impose costs on parties other than petitioning creditors).

The bankruptcy courts have construed the term "petitioner" to mean the petitioning creditors, not their principals and agents. 11 U.S.C. § 303(i) could easily have been drafted to authorize courts to make awards against agents, aiders and abettors or other persons. *See Central Bank of Denver, N.A. v. First Interstate Bank of Denver*, 511 U.S. 164, 176 (1994) ("Congress knew how to impose aiding and abetting liability when it chose to do so."). Section 303(i) does not so provide. Clearly, construing the term "petitioner" to mean petitioning creditor does not produce an absurd result. Therefore, there is no basis to depart from the plain meaning of the statute.

Further, in concluding that Lyon, as an agent, may be held liable, the Bankruptcy Court incorporated and then misapplied agency law. To hold an agent liable for the acts of its principal, the agent must be found to have engaged individually in tortious conduct. *Wade v, Dolgencorp, LLC*, 2009 WL 8630725, *3 (M.D. Fla. 2009) (citing *McElveen v. Peeler*, 544 So. 2d 270, 271 (Fla. 1st DCA 1989)). *See also Navid v. Uiterwyk Corp.*, 130 B.R. 594, 596 (M.D. Fla. 1991). When an agent has acted tortiously, both the agent and the principal are subject to liability for the tortuous acts committed by the agent within the scope of its agency authority. *Meisel v. Grunberg*, 651 F. Supp. 2d 98, 110 (S.D.N.Y. 2010).

Only one reported decision, out of scores decided under this statute, appears to apply agency law to hold an agent of a petitioner liable under Section 303(i).  In that one case, *In re Oakley Custom Homes, Inc.*, 168 B.R. 232 (Bankr. D. Colo. 1994), the court did not construe the term "petitioner."  It simply assumed, without any legal analysis, that an agent is subject to liability under 11 U.S.C. § 303(i).

Significantly, the *Oakley* court, unlike the Bankruptcy Court here, found that the agent had acted in bad faith, a finding tantamount to a finding of tortious conduct.  In contrast, in *In re Denver Comm. Dev. Credit Union*, 2004 WL 2274961 (Bankr. D. Colo. Oct. 5, 2004), the court did not make a finding that the agent had acted in bad faith in causing an involuntary bankruptcy petition to be filed.  In applying the disclosed principal rule, the court stated:

> Furthermore, Mr. Foster's status was that of an agent acting on behalf of a fully disclosed principal. Under the law of agency, it is axiomatic that it is the principal who bears the liability for the acts of its agent where the agent acts on behalf of the principal and discloses that relationship.  *Id.* (citation omitted).

For the agent of a disclosed principal to be liable, the agent must have acted tortiously. Here, Lyon was acting as the servicing agent for the DVI entities.  It was not adjudged to have acted in bad faith.  The Bankruptcy Court's approach – holding an agent liable without a finding of tortious conduct on the part of the agent – is tantamount to imposing strict liability for fees on an agent of a petitioning creditor merely because the agent signed the petition.  Not only did the Bankruptcy Court depart from the plain meaning of the statute but it expanded the scope of the statute by incorporating the law of agency and then misapplied a fundamental precept of agency law – that an agent for a disclosed principal cannot be held personally liable unless a finding is made that the agent acted tortiously.

The Bankruptcy Court's decision to impose liability on Lyon and USB as petitioners or as agents was erroneous and should be reversed.

VI.    **THE FEES AWARDED ARE UNREASONABLE IN VIEW OF THE SCOPE AND NATURE OF THE PROCEEDING AND THE EXCESSIVE TIME SPENT[24] ON THIS MATTER BY ROSENBERG'S LAW FIRMS.**

As a threshold matter, the Bankruptcy Court's view toward fees appears to have been influenced by a view about the merits of the Involuntary Petition that was not based on an adequate factual record.  The Bankruptcy Court commented:

> [T]his is a matter where **someone was standing out in the field and smelling the flowers**, and they suddenly found themselves in court.  It's the opinion of this Court that any legitimate expense in getting rid of that involuntary petition is allowable.  Now, that would include the adversary, that would include appellate fees, that would include fees in the jury trial coming up before Judge Seitz, and any appellate fees on that, and fees for today's hearing.  In other words, the plaintiff didn't start this matter, having it started against him, the rules say he is entitled to be made whole . . . I mean if he decided he needed a three ring circus to watch to make him feel better, yes, we'd disallow that . . . .

DE-5, pp. 15-16 (emphasis added).  Rosenberg was not "standing in a field."  He guaranteed millions of dollars in lease debt owed by his NMI companies.  The leases were in default, Rosenberg's personal debt was not contingent, as Judge Moore found, and the central issue was not whether Rosenberg owed the money but to whom he owed the money.  The Bankruptcy Court had to decide whether the six SPEs that were the lessors (the Petitioning Creditors) were Rosenberg's creditors or whether Rosenberg's creditor was their servicing agent, Lyon, or USB, the Trustee for their note holders.

There was no evidentiary basis for the Bankruptcy Court's suggestion that Rosenberg was merely an innocent bystander.  There was no evidentiary basis for its strong predilection toward awarding any conceivable fees.  The Bankruptcy Court never heard Appellants' evidence concerning good faith.  The Bankruptcy Court did not hear the testimony of a single witness for

---

[24] Rosenberg did not present evidence that he actually received all of the invoices or that he paid them.  While Appellants have no doubt that the two law firms spent the time shown in the Billing Records, there was no evidence that Rosenberg actually paid these charges or even that he is fully liable for all of the charges.

Appellants about the reasons for the bankruptcy filing or about the information relied upon in making that decision.  Indeed, the Bankruptcy Court never heard Rosenberg testify.  Yet, the Bankruptcy Court indicated that it was inclined to award every penny sought by Rosenberg, unless he spent the money to hire a "three ring circus."

In essence, the Bankruptcy Court, without hearing the relevant evidence, formed the strong belief that the Involuntary Petition was filed for an improper motive and without cause.  This belief appears to have influenced the Bankruptcy Court to award excessive fees.

### Unreasonable and Excessive Fees

11 U.S.C. § 303(i)(1) requires that a request for fees be "reasonable."  The standards for approving fee applications under 11 U.S.C. § 330 provide some guidance.  *See Atlas Machine and Iron Works*, 190 B.R. at 803.  In the Eleventh Circuit, the reasonableness of a fee application is evaluated under the factors set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir.1974) and *In re First Colonial Corporation of America*, 544 F.2d 1291 (5th Cir.), *cert. denied sub nom.*, *Baddock v. American Benefit Life Ins. Co.*, 431 U.S. 904 (1977).[25]  *See In re Overseas Holdings Ltd. Partnership*, 392 B.R. 889 (Bankr. M.D. Fla. 2008) (applying *Johnson* and *First Colonial* factors in determining reasonableness of award of fees under Section 303(i)(1)).

The time charges for the post-dismissal work are obviously unreasonable because, as previously discussed, Rosenberg has not prevailed on the damages claims he is pursuing – and

---

[25] The factors set forth in *Johnson* and *First Colonial* are as follows:  (1) the time and labor required, (2) the novelty and difficulty of the legal questions, (3) the skill required to perform the legal services properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee for similar work in the community, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorney, (10) the undesirability of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.  *Johnson*, 488 F.2d at 717-19.

the majority of the post-dismissal legal work was devoted to the damages claims.  Appellants believe these fees are not recoverable under the statute, but awarding fees for these services should not even have been considered until after the conclusion of the damages trial.

The fees sought for the work leading to the dismissal of the petition are unreasonable for other reasons.  The issues before the Bankruptcy Court were narrow in scope.  The Bankruptcy Court limited the issues to those concerning the eligibility of the Petitioning Creditors (*i.e.*, whether each held a separate debt and whether the debts were in bona fide dispute).  The Bankruptcy Court did not reach the issue of whether Rosenberg was generally paying his debts as they became due, *see* 11 U.S.C. § 303(h), or the issue of bad faith.  The issues concerning whether a bona fide dispute existed were not complex.  There was only one novel issue presented – whether SPEs formed to engage in securitizations have standing to be petitioning creditors.

Further, the litigation leading to the dismissal of the Involuntary Petition was not extensive.  Prior to March 2009, the only activity concerned the filing of the motion to dismiss, the response and the reply and a motion for change of venue that was unopposed.  BR-1; BR-2; BR-39, ¶ 6.  Thereafter, the parties engaged in limited discovery, conducting nearly all of it within the latter half of March and the first half of April 2009.  BR-6; BR-9-18; BR-39, BR-45, BR-47.  Two preliminary hearings took place before Judge Cristol to address procedural issues and discovery.  BR- 26; BR-34; BR-42.  The final hearing took place on April 20, 2009.  While it was an evidentiary hearing, it was a short hearing at which no witnesses testified.  BR-81.  The Bankruptcy Court did not have to hear testimony because the parties agreed to submit the issues to the Court based on the stipulated exhibits, the deposition transcripts, affidavits and their memoranda of law.  BR-81, pp. 53-60.  Thereafter, the parties submitted proposed findings of fact and conclusions of law, and, upon consideration, the Bankruptcy Court issued the Dismissal

Order.  After that, the Petitioning Creditors moved for reconsideration, a hearing took place on that motion, and the motion for reconsideration was denied but the Court granted an alternative request to amend certain findings.  BR-129.

Rosenberg is entitled to recover only those fees that were "reasonably necessary" to obtaining a dismissal of the petition.  *In re Merrifield Town Ctr. Ltd. P'ship*, 2010 WL 5015006, *4 (Bankr. E.D. Va. 2010).  While the proceedings leading to the Dismissal Order were not routine, and did involve a substantial amount of legal work on the part of Rosenberg's counsel, an award of approximately $335,000 in fees for this work is disproportionate to the work required.

Part of the reason the fees are so high is the fact that Rosenberg continued to use the services of two law firms, one in Florida and one in Pennsylvania, throughout the proceeding. W&P originally represented Rosenberg in connection with the involuntary bankruptcy case during the short time that it was pending in the Eastern District of Pennsylvania.  Once Rosenberg moved to transfer venue to Florida, GJ&B became involved.  GJ&B was more than capable of handling this matter on its own, after a brief transition.  While it was appropriate and reasonable for W&P to devote some time bringing GJ&B "up to speed," there was no need for W&P's continued involvement throughout the proceeding.  For the most part, the issues were legal ones, involving interpretation of the relevant documents.

W&P's fees exceed $100,000 and were awarded in full.  Rosenberg did not need to employ two law firms throughout the entire process.  It was unreasonable for the Bankruptcy Court to pass the expense of using two law firms onto Appellants.

In addition, the Billing Statements of GJ&B and W&P showed excessive attorney conferences and an extraordinary number of telephone and other conferences with Rosenberg.

Appellants presented a demonstrative exhibit showing that approximately 17% of the attorney time charges were for conference time.  DE-5, p. 36.  The excessive conference time is obvious from a review of GJ&B's Billing Records.  *See* Plaintiff's Tr. Ex. 202 and Tr. Ex. 202A.  While conferences with a client are important, this case was micromanaged by Rosenberg, who conferred with his attorneys almost on a daily basis, sometimes participating in multiple conferences on a single day.  It was not reasonable to pass the costs of excessive conference time onto Appellants.

The Court should reverse the award of all fees that were not related to the effort to obtain the dismissal of the Involuntary Petition and should reduce the remaining fees, $335,000, based on the limited scope and nature of the proceeding and the excessive time charges noted above. Appellants have not challenged the costs awarded to Rosenberg by the Bankruptcy Court.

## CONCLUSION

As demonstrated above, the Fee Order should be reversed because (1) the Fee Motion was untimely filed, and Rosenberg never sought an enlargement of time, (2) assuming that fees incurred in pursuing damages claims under Section 303(i)(2) are recoverable by the prevailing party – and Appellants maintain that they are not -- Rosenberg's claims for attorneys' fees and costs should not have been decided prior to the jury trial on his damages claims, (3) 11 U.S.C. § 303(i)(1) does not authorize bankruptcy courts to award (a) appellate fees, (b) fees for pursuing damages claims and (c) fees on fees, (4) USB asserted a valid setoff defense to Rosenberg's claims for fees and costs, and USB's setoff defense should have been adjudicated prior to the entry of an order holding Appellants liable for Rosenberg's attorneys' fees and costs, (5) Lyon and USB are not liable for attorneys' fees and costs under 11 U.S.C. § 303(i)(1) because they were not the petitioning creditors, and (6) the amount of fees awarded was unreasonable for the reasons stated above.

## REQUEST FOR ORAL ARGUMENT

Appellants respectfully request oral argument.

Respectfully submitted,

SHUTTS & BOWEN LLP
John F. Mariani, Esq.
Florida Bar No. 263524
Peter H. Levitt, Esq.
Florida Bar No. 650978
Larry I. Glick, Esq.
Florida Bar No. 75064
1500 Miami Center
201 South Biscayne Boulevard
Miami, Florida  33131
Telephone: 305-415-9447
Telecopier: 305-415-9873

ATTORNEYS FOR APPELLANTS

## CERTIFICATE OF SERVICE

**I hereby certify** that on November 23, 2012, the foregoing Appellants' Initial Brief on Appeal was served by ECF to Carlos E. Sardi, Esq., Genovese Joblove & Battista, P.A. (csardi@gjb-law.com) and by first class U.S. mail to Yale L. Galanter, Esq. (yale@galanterlaw.com), attorneys for Appellee.

*s/ Peter H. Levitt*
Peter H. Levitt